**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**BELINDA BROADERS,**
**on behalf of her son, B.B., a minor,**

     **Plaintiff,**

**vs.**                                 **Case No. 8:10-CV-2411-T-27EAJ**

**POLK COUNTY SCHOOL BOARD,**

     **Defendant.**
_____/

## REPORT AND RECOMMENDATION

Before the court is Defendant Polk County School Board's ("School Board") **Dispositive Motion to Dismiss Complaint** (Dkt. 5)[1] and Plaintiff Belinda Broader's **Response to Defendant's Motion to Dismiss** (Dkt. 6).  For the reasons explained below, the undersigned **RECOMMENDS** that Defendant's motion be **GRANTED**.

### Background[2]

Plaintiff brought this action on behalf of her minor son, B.B.  At the time of the events complained of, B.B. was a thirteen-year-old, African-American male in the seventh grade at Dundee Middle School, a school operated by Defendant.  B.B. had an unspecified learning disability, Attention Deficit Disorder ("ADD"), and was assigned to an Individualized Education Program ("IEP") under the Individuals with Disabilities Education Act ("IDEA"), as amended, 20 U.S.C. § 1400 et seq. (2006).

---

[1]  The District Judge referred the motion to the undersigned for a Report and Recommendation (Dkt. 7).  See 28 U.S.C. § 636(b) (2009).

[2]  The following background facts are drawn from Plaintiffs' complaint and are construed in the light most favorable to Plaintiff.  See Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).

During the 2006-2007 school year, Plaintiff "was constantly at Dundee Middle School complaining to the administrators that B.B. was continually being bullied by other students" (Dkt. 1 ¶ 10). B.B. complained that he hated going to school because he felt that teachers and administrators did not help him when he reported being bullied. On April 27, 2007, B.B. came home and complained to his mother that his "butt hurt" (Id. ¶ 11). Plaintiff took B.B. to the emergency room where it was discovered that a sewing needle had been embedded in his rectum.

Plaintiff learned that earlier that same day, B.B. was attacked in a school bathroom by three male students. Two boys pinned B.B. down while a third boy inserted a sewing needle into B.B.'s rectum. A school administrator, who is not identified in the complaint, was standing near the bathroom at the time of the assault and saw the three boys enter the bathroom behind B.B., but the administrator did not investigate.

## Discussion

Count One of Plaintiff's complaint, brought pursuant to 42 U.S.C. § 1983 (2006), alleges that Defendant violated B.B.'s rights under the Due Process and Equal Protection Clauses of the Fourteenth Amendment by condoning certain practices that contributed to or permitted the harassment of disabled and minority students. The alleged practices include: (1) inadequate training of teachers and administrators; (2) inadequate investigation of complaints by parents and students; (3) failing to protect minority and disabled students from harassment; and (4) permitting intentional or negligent discrimination against minority and disabled students. Counts Two and Three assert state-law tort claims. Count Two alleges that Defendant negligently failed to: (1) train and supervise its employees regarding the investigation, amelioration, and prohibition of minority- and disabled-student harassment; and (2) supervise, discipline, control, and protect students in its care. Count Three alleges negligent infliction of emotional distress.

According to Defendant, the case should be dismissed and Plaintiff should be required to exhaust her administrative remedies under the IDEA before bringing the present suit.  However, even had Plaintiff exhausted her administrative remedies under the IDEA, Defendant contends that Plaintiff has still failed to state a claim upon which relief can be granted.  Defendant argues that Plaintiff's due-process claim should be dismissed because Defendant did not have a duty to protect B.B. from harm by third-parties.  Defendant also argues that Plaintiff has failed to allege an equal-protection claim because Plaintiff did not allege the existence of a similarly situated comparator class that was treated differently than minority and disabled students.  Finally, because Plaintiff failed to allege a claim under federal law, Defendant urges the court to decline supplemental jurisdiction over Plaintiff's state-law tort claims.

**1.       Administrative Exhaustion Under the IDEA**

The primary purpose of the IDEA is to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education . . . ."  20 U.S.C. § 1400(d).  To further this purpose, the IDEA requires schools to establish an IEP for each disabled child.  Id. § 1414(d)(2)(A).  The IDEA also provides a framework for parents to present complaints "with respect to any matter relating to the identification, evaluation, or educational placement of the child."  Id. § 1415(b)(6).  Before filing a civil action in district court seeking relief pursuant to the Constitution, § 1983, or other federal laws protecting disabled children's rights, a plaintiff must first exhaust the administrative remedies available under the IDEA if the relief sought is also available under the IDEA.  Id. § 1415(l).

Defendant contends that Plaintiff's complaint should be dismissed because Plaintiff has not alleged that she exhausted her administrative remedies available under the IDEA.  However, Plaintiff's complaint does not affirmatively allege any IDEA claims, and her claims do not relate

to the identification, evaluation, or educational placement of B.B.  Plaintiff's reference to B.B.'s IEP is only to demonstrate that B.B. has a learning disability (Dkt. 6 at 11).  Thus, Plaintiff was not required to exhaust her administrative remedies before filing the present suit.  Cf. M.T.V. v. DeKalb Cnty. Sch. Dist., 446 F.3d 1153, 1158-59 (11th Cir. 2006) ("[Plaintiff's] retaliation claims clearly relate to [the disabled child's] evaluation and education, and, therefore, are subject to the exhaustion requirement."); see also Payne v. Peninsula Sch. Dist., 598 F.3d 1123, 1127 (9th Cir. 2010) (finding that application of the administrative exhaustion requirement depends on whether the nature of the claims can be considered educational).

2.      **Plaintiff's Constitutional Claims**

        a.      **Pleading Standard**

A complaint must contain: (1) a short and plain statement of the grounds for the court's jurisdiction; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought. Fed. R. Civ. P. 8(a)(1)-(3).  To survive Federal Rule of Civil Procedure 12(b)(6) dismissal for failure to state a claim, a plaintiff must allege more than "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  The court must view the allegations of the complaint in the light most favorable to the plaintiff, find plaintiff's allegations to be true, and accept all reasonable inferences therefrom. Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).  However, the "[f]actual allegations must be enough to raise a right to relief above the speculative level." Bell Atl. Corp., 550 U.S. at 555. Likewise, "conclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal." Davila v. Delta Air Lines, Inc., 326 F.3d 1183, 1185 (11th Cir. 2003).  Factual allegations do not need to be in detail, but a complaint must include more than "an unadorned,

the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). More simply, factual allegations must permit a court reviewing a motion to dismiss "to draw the reasonable inference that the defendant is liable for the misconduct alleged" under some viable legal theory. Id.

### b.       Liability of the School Board

Section 1983 provides a cause of action to an individual who has been deprived of his or her constitutional rights by a person acting under the color of law.   42 U.S.C. § 1983.   Local governments are included among those persons to whom § 1983 applies. See Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 690 (1978).  A local government cannot be held liable under § 1983 solely because it employs a tortfeasor; in other words, a local government cannot be held liable on the theory of respondeat superior. Id. at 691.  To establish § 1983 liability against a local government, there must be a policy or custom behind the deprivation of a constitutional right. Id. at 690-91.  The custom or policy must be the "moving force of the constitutional violation." Id. at 694.  To prove the existence of an unlawful custom, "a plaintiff must establish a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." Brown v. City of Fort Lauderdale, 923 F.2d 1474, 1481 (11th Cir. 1991) (citation and internal quotation marks omitted).

Plaintiff alleges that Defendant violated B.B.'s civil rights by condoning certain practices, including the inadequate training of teachers and administrators, the inadequate investigation of complaints by parents and students, and the inadequate protection of disabled and minority students. To substantiate this allegation, Plaintiff states that school administrators ignored her repeated complaints of harassment and that an unnamed school administrator provided insufficient supervision during an incident where B.B. was assaulted in a school bathroom.  However, Defendant

is not liable for the independent actions of its employees, and beyond the bare allegations that Defendant's polices were inadequate, there is nothing that links Defendant's actions to the specific harm alleged – that B.B. was subject to harassment and bullying at school.  Plaintiff has not pleaded sufficient allegations to establish a widespread practice or custom on the part of Defendant that caused the harm alleged.

The complaint should be dismissed because Plaintiff has failed to alleged facts sufficient to demonstrate that Defendant is liable.  However, this does not end the inquiry because Plaintiff's complaint contains other defects that warrant discussion.  Even if Plaintiff had pleaded sufficient facts to establish Defendant's liability, the complaint would still fail to state a claim upon which relief can be granted.

### c.        Plaintiff's Due Process Claim

Although the Due Process Clause of the Fourteenth Amendment forbids state actors from depriving individuals of life, liberty, or property without due process of law, it does not place an affirmative duty on state actors to protect individuals from harm caused by private parties.  See DeShaney v. Winnebago Cnty. Dep't of Soc. Servs., 489 U.S. 189, 195 (1989).  The purpose of the Due Process Clause is "to protect the people from the State, not to ensure that the State protect[s] them from each other."  Id. at 196.  "The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security."  Id. at 195.

However, "in certain limited circumstances the Constitution imposes upon the State affirmative duties of care and protection with respect to particular individuals."  Id. at 198.  Such duties on the part of the state may exist when: (1) the state takes a person into its custody and holds him there against his will; (2) the state creates a danger to a particular individual; or (3) the state renders a particular individual more vulnerable to a danger.  Wyke v. Polk Cnty. Sch. Bd., 129 F.3d

560, 567 (11th Cir. 1997) (citation omitted).  An affirmative duty to protect an individual "arises from limitations the state places upon an individual's ability to act on his own behalf, 'not from the State's knowledge of the individual's predicament or from its expressions of intent to help him.'" Id. at 570 (quoting DeShaney, 489 U.S. at 200).  "Compulsory school attendance laws alone are not a 'restraint of personal liberty' sufficient to give rise to an affirmative duty of protection."  Id. at 569.

"[T]o prevail on a claim of a substantive due-process violation, a plaintiff must prove that a defendant's conduct 'shocks the conscience.'"  Nix v. Franklin Cnty. Sch. Dist., 311 F.3d 1373, 1375 (11th Cir. 2002) (quoting Cnty. of Sacramento v. Lewis, 523 U.S. 833, 836, 846-47 (1998)).  "[A]ctions intended to injure in some way unjustifiable by any government interest are those most likely to rise to the conscience-shocking level."  Id. at 1376 (citation and internal quotation marks omitted).  The Due Process Clause should not be interpreted to impose duties that are analogous to those traditionally imposed by state tort law.  Collins v. City of Harker Heights, Tex., 503 U.S. 115, 128 (1992).  As such, a showing of mere negligence is insufficient to establish a due-process claim. Nix, 311 F.3d at 1375-76.  Moreover, "in a classroom setting, courts have not allowed due-process liability for deliberate indifference," and "will only allow recovery for intentional conduct under limited circumstances."  Id. at 1378.

In condoning the policies at issue, Plaintiff alleges that Defendant acted with "deliberate indifference," (Dkt. 1 ¶¶ 14, 24), and with "reckless and callous disregard for [B.B's] civil rights" (Id. ¶¶ 15, 24).  Plaintiff also characterizes Defendant's actions as "shocking to the conscience" (Id. ¶ 17).  Assuming arguendo that Defendant acted with deliberate indifference, due-process liability does not attach for such indifference.  Plaintiff cannot save her claim by characterizing Defendant's actions as "reckless," "callous," or "shocking to the conscience."  Without more, such allegations

amount to no more than labels and conclusions that do not raise Plaintiff's right to relief above a speculative level.

Furthermore, Plaintiff's school attendance is not the sort of custodial situation that gives rise to a due-process claim.  Plaintiff does not allege that B.B. was involuntarily committed or that Defendant took some affirmative act that restrained B.B.'s ability to act on his own behalf.  To the extent that Plaintiff is alleging that Defendant or its employees created a danger to B.B. or rendered B.B. more vulnerable by not following up on Plaintiff's complaints, such allegations cannot form the basis of a due-process claim.  See Wyke, 129 F.3d at 569-70 (declining to find that the school created a danger or rendered a student more vulnerable where school officials knew about a student's suicidal ideation and even promised to help him, but did not communicate this to the student's parents before the student committed suicide); see also DeShaney, 489 U.S. at 200 (holding that a state's duty to protect an individual does not arise from the state's knowledge of the individual's predicament).

Finally, Plaintiff has not pleaded sufficient facts to establish a due-process claim premised on Defendant's failure to adequately train its teachers and administrators.  See Collins, 503 U.S. at 128 ("We also are not persuaded that the [defendant's] alleged failure to train its employees . . . was an omission that can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense.").  Plaintiff also has not pleaded sufficient facts to establish a due-process claim based on Defendant's failure to protect disabled and minority students, as a mere failure Defendant to direct more resources towards student safety and protection "will seldom, if ever, be cognizable under the Due Process Clause."  White v. Lemacks, 183 F.3d 1253, 1258 (11th Cir. 1999).  Thus, Plaintiff's due-process claim should be dismissed.

      **d.**      **Plaintiff's Equal Protection Claim**

The Equal Protection Clause provides that no state shall deny a person equal protection of the law, "which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985).  The standard for determining the validity of state legislation or other official action that is challenged as denying equal protection depends on the basis for the state's classification.  See id. at 440-41.  Classifications based on race, alienage, or national origin are subject to "strict scrutiny and will be sustained only if they are suitably tailored to serve a compelling state interest."  Id. at 440.  Classifications based on disability are upheld so long as they are rationally related to a legitimate government purpose. See Bd. of Trs. of Univ. of Ala. v. Garrett, 531 U.S. 356, 368 (2001); see also Cleburne, 473 U.S. at 446 (holding that mental retardation was not a quasi-suspect classification, so classifications based on mental retardation are subject to rational basis review).

A plaintiff who does not allege discrimination against a protected class, but rather asserts that he or she was intentionally treated differently from others who are similarly situated, may assert a "class of one" equal protection claim.  Leib v. Hillsborough Cnty. Pub. Transp. Comm'n, 558 F.3d 1301, 1306 (11th Cir. 2009). " To prove a 'class of one claim,' a plaintiff must show (1) that he was treated differently from other similarly situated individuals, and (2) that the defendant unequally applied a facially neutral ordinance for the purpose of discriminating against him."  Id. at 1307 (citation omitted).  The similarly situated requirement is rigorously applied, and plaintiffs are not permitted to rely on broad generalities when defining those who are similarly situated.  Id.

Plaintiff alleges that B.B. is African American, has ADD, and has an unspecified learning disability.  Plaintiff claims that Defendant violated B.B.'s equal protection rights by not pursuing adequate policies concerning the protection of minority and disabled students.  However, Plaintiff has failed to allege sufficient facts showing that Defendant's policies treat minority and disabled

students differently from other students.  Thus, Plaintiff has not shown that Defendant's policies classify students according to race or disability.  Furthermore, Plaintiff admits that this is not a "class of one" claim (Dkt. 6 at 10).  As a result, Plaintiff has failed to state an equal-protection claim.

**3.       Plaintiff's State-Law Negligence Claims**

In a civil action over which a district court has original jurisdiction, the district court "shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy."  28 U.S.C. § 1367(a) (2006).  However, a district court may decline to exercise supplemental jurisdiction if the court has dismissed all claims over which it has original jurisdiction.  Id. § 1367(c).

Unless the deficiencies in Plaintiff's federal claims are remedied, the court should decline to exercise supplemental jurisdiction over Plaintiff's state-law claims as this case is at an early stage.  See Estate of Amergi ex rel. Amergi v. Palestinian Auth., 611 F.3d 1350, 1366-67 (11th Cir. 2010) (noting that a district court has "considerable discretion" in exercising its supplemental jurisdiction).  As a result, it is not necessary to address Plaintiff's state-law claims at this time.

### Conclusion

Accordingly, and upon consideration, it is **RECOMMENDED** that:

(1)       Defendant's **Dispositive Motion to Dismiss Complaint** (Dkt. 5) be **GRANTED**; and

(2)       Plaintiff's complaint be **DISMISSED WITHOUT PREJUDICE**.

_____
ELIZABETH A JENKINS
United States Magistrate Judge

Dated: April 19, 2011

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of this service shall bar an aggrieved party from attacking the factual findings on appeal.  See 28 U.S.C. § 636(b)(1).

Copies to:
Counsel of Record
District Judge